```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS NAWROCKI, et al.        :    CIVIL ACTION
                               :
        v.                     :
                               :
FAULKNER CIOCCA FORD OF        :
SOUDERTON                      :    NO. 07-1827
```

MEMORANDUM

Dalzell, J.                                        October 29, 2007

In 2005, plaintiffs Thomas Nawrocki and Joan Skopyk-Nawrocki bought a used car from and traded in their old car to defendant Faulkner Ciocca Ford of Souderton ("FCF"). About a month after the transaction, FCF allegedly told the Nawrockis that they owed more money to FCF because the redemption cost of the car they traded in was greater than FCF expected. The Nawrockis refused to pay, and FCF repossessed their car. When the Nawrockis did not pay, FCF allegedly attempted to take out a credit loan in the Nawrockis' name for the balance FCF said was due.

The Nawrockis have sued FCF for violations of the Federal Fair Credit Reporting Act (counts I & II), Pennsylvania Uniform Commercial Code (count III), Pennsylvania's Motor Vehicle Sales Financing Act (count IV), Pennsylvania's Unfair Trade Practices and Consumer Protection Law (count V), breach of contract (count VI), and wrongful repossession/conversion/trespass (count VII). FCF has filed a motion to dismiss counts IV and V, contending

that the Nawrockis failed to state a claim in count IV because the statute in question does not create a private right of action.  FCF also argues that the Nawrockis did not plead their claim in count V with the specificity Fed. R. Civ. P. 9(b) requires.

**I.   Background**

On August 19, 2005, the Nawrockis entered the FCF sales facility and found a used Ford Escape that struck their fancy. Id. ¶ 9, Ex. A.  During that visit, the Nawrockis and FCF negotiated the final sale price for the Ford Escape.  Id. ¶ 10. As part of the transaction, the Nawrockis would trade in their old Pontiac Grand Am, which they were leasing.  Id. ¶ 8.  FCF also made it clear that it would take the steps necessary to obtain the payoff figure on the Pontiac Grand Am.  Id.

The next day, the Nawrockis returned to the FCF sales facility and signed the agreements FCF prepared, including an installment sales contract.  Id. ¶ 12.  They financed most of the Ford Escape purchase price through FCF, which placed the car loan with Ford Motor Credit Company.  Id. ¶ 11.  FCF allegedly assured the Nawrockis that the contract price was final, the financing was approved, and the transaction was complete upon delivery of

their trade-in vehicle. Id. ¶¶ 13, 15. The Nawrockis delivered their Pontiac Grand Am and its keys to FCF during this visit to FCF. Id. ¶ 14.

The installment sales contract stated that the cash price of the Ford Escape was $19,667. Id. Ex. A. The contract also stated that the Nawrockis were trading in their 2004 Pontiac Grand Am, which had a gross allowance of $7,200.00, but had $6,889.26 still owing, apparently under a lease. Id. Thus, the customers would receive a credit of $310.74 for their trade-in against the total cost of the Ford Escape. Id. The contract designated the total payment price, inclusive of all credits and charges, as $21,826.20, and scheduled 60 monthly payments of $363.77 starting on September 18, 2005. Id.

In late September of 2005, the Nawrockis got a phone call from FCF. FCF allegedly told them that they still owed FCF over $8,400 in connection with their August 20, 2005 car purchase. Id. ¶ 17. FCF claimed it had to pay this amount to get title to the Nawrockis' Pontiac Grand Am. Id. FCF sought to disaffirm the deal, although it had already sold (or was in the process of selling) the Nawrockis' Pontiac Grand Am. Id. ¶ 18.

On October 24, 2005, the Nawrockis noticed that their Ford Escape was no longer in their driveway. Id. ¶ 20. At the time,

they had not missed a payment under the installment sales contract they had signed with FCF. Id. ¶ 21. In an October 24, 2005 letter, FCF notified the Nawrockis that it had repossessed the car. Id. Ex. B (Notice of Repossession). The letter stated that the Nawrockis would have to pay at least $8070.48 to get their car back. Id.

With no money coming from the Nawrockis, FCF decided to "go to the mattresses."[1] FCF allegedly attempted to secure a loan in the Nawrockis' name for the amount the Nawrockis owed FCF. Id. ¶ 28. Without their knowledge or consent, FCF is said to have obtained credit reports on the Nawrockis. Id. ¶¶ 28, 29. To get these credit reports, FCF is alleged to have certified falsely to the Consumer Reporting Agency that the reports were being obtained to fund a credit transaction involving the Nawrockis. Id. ¶¶ 31, 32.

On May 4, 2007, the Nawrockis filed a seven count complaint alleging a host of violations of State and Federal law issuing from the facts alleged. The claims at issue here are, as noted, counts IV and V. In Count IV, the Nawrockis aver that FCF

---

[1] Francis Ford Coppola, The Godfather (Paramount, 1972) (in which Santino ("Sonny") Corleone demands, "I want Sollozzo -- if not, it's all-out war -- we go to the mattresses...").

4

violated the Pennsylvania Motor Vehicle Sales Financing Act, 69 Pa. C.S.A. § 601, et. seq., ("MVSFA").  Id. ¶ 56.  In Count V, they allege that FCF violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S.A. § 201-1, et seq., ("UTPCPL").  Id. ¶ 59.

FCF moves to dismiss these two counts.  First, it argues the UTPCPL claim fails because the Nawrockis did not plead the facts relevant to this claim with the particularity Fed. R. Civ. P. 9(b) demands.  Def.'s Mem. at 4-7.  Second, FCF argues the MVSFA claim fails under Fed. R. Civ. P. 12(b)(6) because the MVSFA does not supply a private right of action.  Id. at 8-10.

## II.  Analysis[2]

---

[2]In reviewing a motion to dismiss, "[w]e accept all well pleaded factual allegations as true and draw all reasonable inferences from such allegations in favor of the complainant." Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003).

To survive a motion to dismiss, the plaintiff must "allege facts sufficient to raise a right to relief above the speculative level."  Broadcom Corp. v. Qualcomm Inc., __ F.3d __, 2007 WL 2475874, at *14 (3d Cir. Sept. 4, 2007) (citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).  The complaint must include "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S. Ct. at 1974. This requires "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  Haspel v. State Farm Mut. Auto. Ins. Co., 2007 WL 2030272 at *1 (3d Cir. Jul. 16, 2007) (unpublished)

Both the UTPCPL and MVSFA claims are asserted under our supplemental jurisdiction, 28 U.S.C. § 1367, and we shall apply Pennsylvania law throughout.  Although the Nawrockis have alleged their UTPCPL claim with sufficient particularity to satisfy Rule 9(b), they have not alleged a claim under a provision of the MVSFA that gives them a private right of action.

### A. UTPCPL and Rule 9(b)

Under Fed. R. Civ. P. 9(b), a plaintiff must allege "the circumstances constituting fraud or mistake...with particularity."  Rule 9(b) requires heightened particularity in fraud pleadings "in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Machinery v. Southmost Machinery, 742 F.2d 786, 791 (3d Cir. 1984), cert. denied, 469 U.S. 1211 (1985).  Plaintiffs can satisfy Rule 9(b) "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Lum v. Bank of America, 361

---

(quoting Twombly, 127 S. Ct. at 1969)

F.3d 217, 224 (3d Cir. 2004) (internal quotations removed).

Our Court of Appeals has interpreted existing Pennsylvania state court precedent as requiring those suing under the UTPCPL to make out the elements of common law fraud. <u>Tran v. Metropolitan Life Ins. Co.</u>, 408 F.3d 130, 140-41 (3d Cir. 2005). As such, UTPCPL claims are subject to the heightened particularity requirement of Rule 9(b). <u>Id.</u> To establish a common law fraud claim under Pennsylvania law, the plaintiff must show "a material misrepresentation of an existing fact, scienter, justifiable reliance on the misrepresentation, and damages." <u>Booze v. Allstate Ins. Co.</u>, 750 A.2d 877, 880 (Pa. Super. 2000).

FCF argues that the Nawrockis have not alleged the facts establishing the elements of common law fraud with sufficient particularity to satisfy Rule 9(b). FCF goes so far as to say the Nawrockis do nothing but "quote the statutory provision." Def.'s Mem. at 6.

But the Nawrockis have palpably alleged the necessary facts with far more particularity than the "date, time or place" Rule 9(b) requires.[3] <u>Lum</u>, 361 F.3d at 224. The Nawrockis attached a

---

[3]The Nawrockis assert their UTPCPL claim based on violations of various different provisions in UTPCPL. Our analysis herein concentrates on establishing the claim under UTPCPL § 201-2(4)(xxi), the catch-all provision, which prohibits "[e]ngaging

copy of the contract they signed to the complaint. Compl. Ex. A. The contract stated that the credit the Nawrockis received for their Pontiac Grand Am (a total of $310.74) was based on the gross allowance minus the amount owing. Id.  The Nawrockis also allege that FCF representatives assured them that the price quoted in the contract was the total amount the Nawrockis would owe FCF. Id. ¶ 13. As it turned out, the amount stated for the trade-in value and the subsequent assurances were both said to be false. Id. ¶ 17.

The Nawrockis also plead scienter with the requisite particularity when they allege that FCF assured them that it would determine the payoff figure on their trade-in. Id. ¶ 8. The contract the Nawrockis signed states that the amount owing on their trade-in was $6,889.26. Id. Ex. A. However, FCF allegedly called the Nawrockis less than a month later to tell them the actual effect of the trade-in on the contract was not a $310.74 credit, but debit in excess of $8,400. Id. ¶ 17. This dramatic swing in fortune suffices at this stage of the litigation to infer, at a minimum, FCF's recklessness as to the truth of the

---

in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." This analysis does not prevent the Nawrockis from establishing a UTPCPL violation under a different provision.

representations it made about the final contract price and trade-in value of the Nawrockis' Pontiac Grand Am.

The Nawrockis allege that they believed that the contract price was the total price they would have to pay. This suffices at this early stage to establish justifiable reliance on the misrepresentation that they would owe FCF no more than the contract stated. Id. ¶ 13.

Finally, the Nawrockis plead with sufficient particularity the damages caused by their reliance on FCF's alleged misrepresentation. Due to FCF's alleged misrepresentation, the Nawrockis no longer have a vehicle. Having relied on the alleged misrepresentation, the Nawrockis contracted to buy the Ford Escape, and gave FCF their Pontiac Grand Am. Id. ¶ 15. FCF eventually repossessed the Ford Escape, and, inexplicably (at least now), sold the Nawrockis' Pontiac Grand Am, leaving them with no car. Id. ¶ 18, 20. Had FCF disclosed the real trade-in value, the Nawrockis could have decided either not to enter into the contract or not to trade in their Pontiac Grand Am, and pay the $310.76 they got for it out of pocket. Either way, the Nawrockis would still have a car.

We present only one theory of fraud that we can glean from the facts alleged. As there is no need to present more than one

theory to establish that the Nawrockis have satisfied Rule 9(b), we go no further.  We will deny FCF's motion to dismiss as to the UTPCPL claim.

### B.   MVSFA and private rights of action

In count IV, the Nawrockis seek redress for FCF's violations of the MVSFA.  Compl. ¶ 55-57.  FCF argues that the Nawrockis' MVSFA claim should be dismissed under Fed. R. Civ. P. 12(b)(6) because the MVSFA does not create a private right of action.  Def.'s Mem. at 8-10.  Although certain provisions of the MVSFA may create private rights of action, the Nawrockis have not alleged violations of any of those provisions, and so we will dismiss their MVSFA claim.

The Pennsylvania Supreme Court has not ruled on whether the MVSFA creates a private right of action.  If a state's highest court has not spoken to an issue, then we must engage in the perilous business of "predict[ing] how the state's highest court would decide the issue were it confronted with the problem." Jaworowski v. Ciasulli, 490 F.3d 331, 333 (3d Cir. 2007) (internal quotations removed).  Lower state court rulings do not

bind us, but we are obliged to consider them.[4] Tran, 408 F.3d at 140-41.

The Pennsylvania Supreme Court has adopted a portion of the test from Cort v. Ash, 422 U.S. 66, 78 (1975), to determine when

---

[4]FCF brings to our attention a single case, and argues it implies there is no private right of action under the MVSFA. Salazar v. Allstate Ins. Co., 702 A.2d 1038, 1044 (Pa. Super. 1997) (holding that plaintiff could not sue to reform the contract to include the desired coverage when the insurer failed to include the statutorily required notice that the policy did not cover damage a under- or uninsured motorist causes in the renewal notice when the insured waived such coverage when she first purchased the policy). The case involved a different statute, i.e., the Motor Vehicle Financial Responsibility Law ("MVFRL"). Although the statute in Salazar is analogous to the MVSFA, the Superior Court does not say there is no private right of action in the entire MVFRL, and the case does not address whether the MVSFA creates such a right.

The Nawrockis bring to our attention three cases in which, they contend, Pennsylvania courts recognized a private right of action under the MVSFA. Pl.'s Mem. at 11; Beemus v. Interstate Nat'l Dealer Serv., Inc. 823 A.2d 979, 981 (Pa. Super. 2003) (noting that the trial court held plaintiff was "entitled to pursue an affirmative right of action against [the defendant] under the MVSFA," without reviewing or analyzing the issue); Indus. Valley Bank and Trust Co. v. Nash, 502 A.2d 1254, 1263 (Pa. Super. 1985) (holding that repossession notice must comport with requirements of both U.C.C. and MVSFA); Roxy Auto Co. v. Moore, 122 A.2d 87, 88 (Pa. Super. 1956) (affirming the trial court decision to strike a judgment in a contract action as void because the contract violated provisions of the MVSFA). None of these cases states that there is a private right of action under the MVSFA. Moreover, none of the cases engages in any analysis of why courts should imply a private right of action from the MVSFA.

As such, the cases the parties cite do not help us to determine the issues at hand.
11

a court may infer a private right of action under a statute. Witthoeft v. Kiskaddon, 733 A.2d 623, 626 (Pa. 1999). Pennsylvania courts consider whether (1) plaintiff belongs to the class for whose special benefit the statute was enacted, (2) there is indication of any explicit or implicit legislative intent to create or deny such a remedy, and (3) a private right of action would be consistent with the purposes of the legislative scheme. Id. The second Cort factor is the most important, and given the greatest weight. Id. (citing Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (1979)).

To start, we dispense with the first and third Cort factors. The first Cort factor weighs in favor of the Nawrockis because the Pennsylvania General Assembly created this statute to benefit the class of "installment purchasers of motor vehicles," of which the Nawrockis are clearly members. 69 Pa. C.S.A. § 602.

The third Cort factor weighs against the Nawrockis. Many of the sections of the MVSFA are dedicated to establishing an administrative regime regulating motor vehicle installment sales contracts. See 69 Pa. C.S.A. § 604-612 (licensing), 634 (effect of revocation of license on existing contract), 637 (administrative and criminal penalties). If the purpose of the MVSFA is to create a licensing regime, a private right of action

would not seem consistent with such a purpose.

We now turn to the second and most important Cort factor, the intent of the legislature. The Pennsylvania General Assembly mentioned three reasons for creating the MVSFA:

> [1] to bring under the supervision of the Commonwealth all persons engaged in the business of extending consumer credit in conjunction with the installment sale of motor vehicles; [2] to establish a system of regulation for the purpose of insuring honest and efficient consumer credit service for installment purchasers of motor vehicles; [3] and to provide the administrative machinery necessary for effective enforcement.

Id.

On its face, this policy statement focuses on creating an administrative system in the Department of Banking to govern motor vehicle installment sales contracts. Read alone, it suggests the General Assembly intended to protect installment sales purchasers of motor vehicles through licensing and administrative process, with a private right of action neither mentioned nor fairly inferrable.

To be sure, the MVSFA can only "insur[e] honest and efficient consumer credit service for installment purchasers of motor vehicles," if buyers can enforce some of the MVSFA's provisions on their own. 69 Pa. C.S.A. § 602. For example, sections 613, 614, and 615 list the provisions the MVSFA requires and prohibits, respectively, in installment sales contracts for

automobiles.  Section 631 provides buyers with the right to have the installment sales contract held unenforceable if it contains "prohibited charges."  Section 625 states that if a defaulting buyer pays the full price of the installment sales contract, then the holder of the vehicle must return it and any other collateral in his possession.  The General Assembly through these sections seemed to intend that if a seller did not comply with any of them, the buyer would have the right to enforce the provision.

Yet we cannot imply a private right of action in the entire MVSFA simply because the MVSFA contains provisions that the buyer can enforce.  This would, among other things, ignore the a difference between a statute that creates a private right of action and one that supplies an element of an existing cause of action.[5]  When a statute creates a private right of action, a plaintiff need only make out a violation of the statute to

---

[5] For example, civil claims brought under the Securities and Exchange Commission's regulation 10b-5 are implied private rights of action because the statute and regulations themselves set out the elements of the claim without reference to anything else, but do not explicitly give this right to private litigants.  See, e.g., Ernst & Ernst v. Hochfelder, 425 U.S. 185, 196 (1976).  On the other hand, the classic example of statutes that supply an element of a cause of action are statutes used to show negligence per se claims.  E.g., Jenkins v. Wolf, 911 A.2d 568 (Pa. Super. 2006) (holding negligence per se when pedestrian in crosswalk struck by car because traffic statute requires cars to yield to pedestrians).

recover.  On the other hand, when a statute supplies an element of a cause of action, the plaintiff must make out the violation of the statute and all the other elements of the relevant cause of action before she can recover.

Most of the provisions of the MVSFA that an individual buyer can enforce supply elements of another cause of action.  All of the MVSFA sections requiring or prohibiting certain types of contract clauses in installment sales contracts are enforceable through contract actions, see id. § 613-615, 630, 631, 635, as are those sections concerning limits on various charges and payments, see id. § 618-622.  Still other provisions deal specifically with other causes of actions, see e.g., §§ 625 (deeming certain actions as in compliance with Pennsylvania's statutory right to redemption capital under 13 Pa. C.S.A. § 9623), 627 (deficiency judgments).

None of the foregoing eliminates the possibility that a particular MVSFA provision might create a private right of action.  Indeed, to say more at this time would render much of this opinion advisory.  Rather than construe the entire MVSFA, we will examine the specific MVSFA provisions under which the Nawrockis seek to recover, and determine whether those provisions may fairly be inferred to create a private right of action.

15

The Nawrockis assert two different bases for claims under the MVSFA. First, they allege that FCF's notice of repossession did not comply with the requirements of the MVSFA. Compl. ¶ 56. Second, they allege that FCF violated the MVSFA when it applied for motor vehicle installment financing in the Nawrockis' name. Id. ¶ 57.

The Nawrockis' first claim involves a provision of the MVSFA that establishes an element of a different cause of action. MVSFA § 623 specifies what constitutes adequate repossession notice. This section provides plaintiffs with a way to establish an element of the tort of conversion. To make out a prima facie case for conversion, a plaintiff must show that the defendant "interfere[d] with the plaintiff's use or possession of a chattel without [her] consent and without lawful justification." Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 581 (Pa. Super. 2003) (emphasis added). A plaintiff could establish lack of lawful justification by demonstrating that the repossession notice is defective under § 623. If the Nawrockis can show that the repossession notice ran afoul of § 623, then they can use this to establish their conversion and trespass claims against FCF. Otherwise, the MVSFA does not make a defective repossession notice in and of itself the subject of an implied cause of

16

action.

The Nawrockis do not identify a particular MVSFA provision that FCF violated when it allegedly applied for financing in the Nawrockis' name without their knowledge or consent.  Although FCF's actions, if true, would violate other statutes[6], we cannot find any provision in the MVSFA that specifically covers the averred behavior.  Since we cannot find, and the Nawrockis do not point to, a relevant MVSFA provision, we must dismiss this particular claim.

---

[6] For example, this behavior would likely violate the Federal Fair Credit Reporting Act, which plaintiffs duly invoke.

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS NAWROCKI, et al.      :    CIVIL ACTION
                             :
          v.                 :
                             :
FAULKNER CIOCCA FORD OF      :
SOUDERTON                    :    NO. 07-1827
```

ORDER

AND NOW, this 29th day of October, 2007, upon consideration of defendant's motion to dismiss and for more definite statement (docket entry #10), plaintiff's response, and defendant's request for oral argument (docket entry #13), it is hereby ORDERED that:

1.   Defendant's request for oral argument is DENIED;

2.   Defendant's motion to dismiss and for more definite statement is GRANTED with respect to Count IV;

3.   In all other respects, defendant's motion to dismiss and for more definite statement is DENIED; and

4.   Defendant shall ANSWER plaintiff's complaint by November 9, 2007.

                              BY THE COURT:


                              _____
                              Stewart Dalzell, J.